**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

REPUBLIC FIRE AND CASUALTY
INSURANCE COMPANY                                        **PLAINTIFF/
                                                    COUNTER-DEFENDANT**

v.                                              **CIVIL ACTION NO.: 4:10-CV-037-SA-JMV**

MARK AZLIN D/B/A THE BOURBON MALL
and THE BOURBON MALL, INC.                                    **DEFENDANTS/
                                                    COUNTER-PLAINTIFFS**


### MEMORANDUM OPINION

In this insurance coverage dispute, Plaintiff Republic Fire and Casualty Insurance Company seeks a declaration that no coverage exists under a commercial fire insurance policy it issued covering the Bourbon Mall, a Leland, Mississippi, restaurant which suffered a total fire loss on October 7, 2009. Republic has filed a Motion for Summary Judgment [179], asserting that it is entitled to have the policy declared void ab initio because Mark Azlin, the owner of the Bourbon Mall, made material misrepresentations in the application for insurance. Alternatively, Republic argues that it is entitled to a declaration that no coverage exists under the policy because Azlin breached the fraud/concealment condition of the insurance policy by making material misrepresentations to Republic both prior to and after the loss. Finally, Republic seeks partial summary judgment as to the bad-faith claims handling and certain other counter-claims filed by Azlin. Also before the Court is a Motion to Strike the Affidavit of Mark Azlin [194]. After reviewing the motions, responses, rules and authorities, the Court is ready to rule.

### BACKGROUND FACTS

Viewing the record in the light most favorable to Azlin, the non-movant, the basic background facts of this case are as follows: Mark Azlin owned and operated the Bourbon Mall,

a Leland, Mississippi restaurant. Prior to 2009, Azlin had for many years obtained insurance coverage for the Bourbon Mall through Gwen McKnight, an agent for the Powell Insurance agency (later Arthur Gallagher). McKnight placed insurance coverage for the Bourbon mall with several different insurance companies over the years.

On June 18, 2006, a fire occurred at the Bourbon Mall, the cause of which was never conclusively determined. Although the restaurant never closed, the main kitchen area was heavily damaged and Azlin received approximately $174,580 in insurance proceeds from the fire loss.

In addition to owning the Bourbon Mall, Azlin was a partner in a residential real estate business with his brother, Ralph Azlin (Ralph). In the spring of 2009, Ralph told Azlin that he was saving substantial amounts of money on his insurance by obtaining his insurance through Randal "Randy" Henson, the owner of the Mid-Delta Insurance Agency. Azlin told Ralph that he was interested in saving money, and to take a copy of his existing Bourbon Mall policy to Henson. Azlin avers that Ralph took a copy of his existing Bourbon Mall policy to Henson's office.

One night in May 2009, Henson came to the Bourbon Mall while it was hosting a crawfish boil. Henson approached Azlin and they discussed insurance.[1] Azlin informed Henson that he already had coverage through Powell Insurance for around $11,000 per year, and Henson stated "Mark, we can cut that in half. We can cut that in half." Azlin responded that a fifty percent reduction in premiums sounded good, and agreed to let Henson see if he could beat his current policy "apples to apples." According to Azlin, this was a very informal conversation which only lasted a few minutes.

---

[1]The substance of this conversation is hotly contested, and will be discussed in greater detail below.

Henson later filled out an application for insurance electronically and submitted it to Republic on June 11, 2009. It appears undisputed that the application contains erroneous information. Of particular import to the pending motion, the application asks whether the insured had "Any policy or coverage declined, cancelled, or non-renewed during the prior 3 years?" and "Has the insured had any losses other than liability over the last 4 years?" Both of these questions are answered "No." In fact, the Bourbon Mall had suffered a loss in the past four years (the 2006 fire) and had also been declined, cancelled, and/or non-renewed by other insurance companies within the past three years.[2]

Azlin contends that he was never asked these questions by Henson, and that the false information in the application was inserted by Henson without his knowledge. He further avers that Henson never gave him an opportunity to review the application before submitting it to Republic, and he assumed that Henson copied his information from his previous insurance policies which had been given to Henson by Ralph.

Although the application for insurance with Republic contains a box for the applicant's signature, the copy of the application in the record (which is a print out of the electronic application submitted by Henson) is unsigned. Republic asserts that it does not require a signed application to issue an insurance policy. Henson stated that normally he would print out the application and have the applicant sign. He would then mail the signed application to Republic[3] and place a copy of the

---

[2]Azlin points out that the application contains other erroneous information relating to the name of the business, its corporate form, whether the insured owned other property, the year the Bourbon Mall was built, and the square footage of the building. Additionally, some of the questions on the application are not answered at all.

[3]Henson stated in his January 7, 2010 examination under oath that his normal procedure was to mail a signed copy of the application for commercial policies to Republic. However, in

signed application in his files.  However, no signed copy of the Bourbon Mall application can be located either by Henson or Republic.  In any event, Republic issued the subject fire insurance policy and Henson delivered it to Azlin.

On October 7, 2009, the Bourbon Mall suffered a total fire loss.  Republic commenced an investigation, retaining M.A. Stringer and Associates to investigate the cause and origin of the fire.  The investigation ultimately was unable to determine the cause of the fire.  James Jackson, an investigator from the State Fire Marshal's Office, concluded that the fire was a result of lightning striking a nearby utility pole and ruled the fire as "accidental." [4]  On October 12, 2009, independent adjuster Brent Bowers interviewed Azlin and obtained a recorded statement.  On November 9, 2009, Republic issued Azlin an advance of $50,000 on the insurance policy under a reservation of rights.  In January 2010, Republic conducted examinations under oath of Azlin and Henson.  Republic asserts that sometime after the Bower's interview, it obtained the claim file documents from Colony Insurance, which had covered the 2006 fire, and only then did it discover that the 2006 fire had occurred.  On March 5, 2010, Azlin submitted a sworn proof of loss claiming a total loss of $450,000.

On April 16, 2010, Republic commenced this suit, seeking a declaration that no coverage existed under the policy.  Republic contends that the policy is void ab initio due to material misrepresentations in the application.  Alternatively, Republic contends Azlin breached the fraud/concealment clause of the policy by making misrepresentations in the application, as well as by making false and misleading statements to Republic during its investigation.  Azlin filed a

_____

his later deposition, he states that he did not mail signed copies of the application.

[4]Republic has filed a separate motion to exclude the testimony of Jackson as unreliable [178].

counterclaim against Republic, asserting causes of action for breach of contract, "bad faith investigation / denial of claim/ refusal to pay a claim for damages," and "gross negligence or malicious, intentional acts."

## DISCUSSION

I.    Motion to Strike Affidavit of Mark Azlin [194]

As part of his response to Republic's Motion for Summary Judgment, Azlin attached a 28 page affidavit.  In the affidavit, Azlin avers the following:

> 32.    Randy Henson never asked about whether I had any prior insurance claims at the Bourbon mall or anywhere else.  Claims were never mentioned nor asked by Randy Henson.
> 33.    Randy Henson did not ask me anything as specific as whether I had any prior non-liability or prior fire loss within the last four years or for that matter any prior year.

Republic seeks to strike Azlin's affidavit, apparently in its entirety, contending that the above is directly contrary to testimony Azlin gave during his EUO and deposition.[5]

A party may not defeat a motion for summary judgment using an affidavit that impeaches, without explanation, his own prior sworn testimony.  S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1995).  However, the Fifth Circuit has also stated that "[i]n considering a motion

---

[5]Although Republic asserts that the affidavit is also contradicted by Azlin's deposition, it provides no citation to the allegedly contradictory deposition testimony.  The Court notes, as pointed out by Azlin, that the following portion of Azlin's deposition testimony is consistent with lines 32 and 33 from his affidavit:

> A.    Randy, while we were at the Bourbon Mall and just talking, at no particular time do I – during our conversation did he ever say "Mark, did you have a prior loss on this particular" . . . But he never at any point said during a certain time period have you had a loss. . . .
> Q.    What you're telling me is that you're saying Randy Henson never asked you whether or not you had a prior loss within four years of the application date.
> A.    That is correct.

for summary judgment, a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition" and "in light of the jury's role in resolving questions of credibility, a district court should not reject the content of an affidavit even if it is at odds with statements in an earlier deposition." <u>Kennett-Murray Corp. v. Bone</u>, 622 F.2d 887, 894 (5th Cir. 1980).

During its investigation of Azlin's insurance claim, Republic required Azlin to submit to an EUO[6] wherein counsel for Republic questioned Azlin about the conversation with Henson, among many other things. According to Azlin, on the night of the subject conversation, Henson was at the Bourbon Mall "having a cold beer, eating crawfish" and "he asked me, a few general questions." Counsel for Republic began going through the insurance application and asking Azlin whether certain questions on the application were asked by Henson. Republic seizes upon the following exchange:

> Q. All right. No. 2, "Has the insured had any losses other than liability losses over the last four years?" Anything else? The answer there is no. Were you asked that question, or do you not remember? . . . And you're telling me that you don't remember whether he asked you that question?
>
> **A.** **Exactly right.**
>
> Q. Okay. And so, therefore, your testimony is you don't remember whether you told him yes or no?
>
> A. I know that I would have asked the dates. I would have – I would have said, "Look, you know, we had – I did have a loss a while back." I wouldn't have lied, no sir. I would not have given an answer – that's why I asked you just then because I didn't want to give anything incorrect.
>
> Q. Okay. You don't remember, though, whether you told him yes or no and you don't remember if the question was asked; is that correct?
>
> **A.** **That's correct.**
>
> Q. Okay. Both of those things are correct. You don't remember –
>
> A. I don't remember the question ever being asked and I don't remember

---

[6]The EUO lasted two days, according to Azlin's affidavit.

ever giving a response.

Q.    Okay.  But if you were asked, you don't remember if you told him yes or no.

**A.    That is correct.**

Q.    If he says you told him no, would he be telling the truth?

A.    If he says I said no, I would say he is a liar.

Q.    Okay.  You-all didn't have a discussion and say, "Well that's pretty–" something along the lines of, "Well, that's pretty close."

A.    No.

Q.    "We can go ahead and put no down and it will be all right"?

A.    No.

Q.    Nothing like that?

A.    No.

Counsel for Republic continued going through the application and asking whether Azlin could recall being asked certain questions. After being asked if Henson had inquired about a service contract for cleaning the Bourbon Mall's hood and vent system, Azlin stated:

A.    I – I know for a fact that he did not sit down and ask me these – all these questions. I mean – I mean – I'm visiting with him in a matter of two or three minutes. So, I mean, to sit down and have this detailed discussion, I would remember that. Does that make any sense to you?

Q.    I under what – I understand what you're testifying to.

A.    When he was out there, it was about a three or four minute conversation. "Hey, Randy. How are you doing?" Boom, boom, boom. "Sign here. Sign here." Talked a little BS, and he was on his way, but it wasn't – it was not a sit-down, let's go over a list like this. I can promise you.

According to Republic, the bolded responses make it "clear that [Azlin] . . . testified that not only could he not remember whether Henson asked him about prior losses, Azlin testified that he could not remember whether he responded yes or no. He now attempts to change that testimony by essentially stating that he was never asked by Henson about prior insurance claims or losses."

After reviewing the EUO and affidavit, Court is not persuaded that the affidavit is so at odds with the prior testimony that it should be stricken. To the extent a contradiction is present, it is

present in the EUO itself between Azlin's affirmative responses to the leading questions posed by counsel for Republic and other portions of the examination where Azlin elaborates in his own words. Although Republic asserts that Azlin's statement that "he did not sit down and ask me . . . all these questions" was in response to the vent hood servicing contract question, the Court is obligated to view the testimony in the light most favorable to Azlin. While Azlin's testimony is not a model of consistency, viewing the totality of Azlin's testimony in the light most favorable to him, to the extent a contradiction exists, it presents a question of credibility for the jury to resolve.

Republic also asserts that statements in Azlin's brief such as "[Azlin] cannot remember exactly what was said in his conversation with Henson" and "It is not surprising Azlin cannot remember exactly what was said in his conversation with Henson," constitute admissions that his testimony relating to the conversation with Henson is inadmissable under Federal Rules of Evidence 402 and 602. The Court finds this argument to be without merit.

Republic also relies on the case of Edmiston v. Schellenger, 343 So. 2d 465 (Miss. 1977), for the proposition that Azlin is bound by the testimony he gave in his EUO regarding his recollection of the conversations with Henson and may not change it now. In Edmiston, the insured gave indisputably false answers in his deposition regarding his whereabouts on the day a fire occurred. Id. at 466. At trial, the insured testified that he realized his statements were incorrect shortly after the deposition, but refused to sign the deposition or correct his statements for over two and one-half years. Id. The Mississippi Supreme Court analogized the insured's behavior to refusing to answer a material question, and found that the insured's "persistent refusal to correct his deposition constitutes a willful and knowing provision of false information to the insurance company." Id. at 467.

8

As stated above, although Azlin responded affirmatively to several leading questions from Republic's counsel regarding his lack of recollection, he also stated "I don't remember the question being asked" (which is consistent with the question never being asked) and "I know for a fact that [Henson] did not sit down and ask me these – all these questions."   Therefore, unlike Edmiston, where the willfulness of the insured's false statements could be clearly inferred from his persistent refusal to correct them for over two and one-half years, Azlin actually stated during the EUO (and later in his deposition) that Henson did not ask him the questions at issue.  To the extent there is inconsistency, it is a question for the trier of fact.  See State Farm & Cas. Co. v. Ramsey, 719 F. Supp. 1337, 1344 (S.D. Miss. 1989) (willfulness of insured's inconsistent testimony in EUO and deposition regarding whereabouts on night of the fire held to be an issue of fact for the jury); Watkins v. Continental Ins. Co., 690 F.2d 449, 552-53 (5th Cir. 1982).

 Republic next asserts that Azlin's lack of memory cannot create a genuine issue of fact, relying on Dickey v. Baptist Memorial Hosp., 146 F.3d 262 (5th Cir. 1998).  In Dickey, the Fifth Circuit held that the fact that one witness could not recall a telephone conversation (and another witness did recall the conversation) did not create an issue of fact as to whether the conversation occurred.  Id. at 266 n.1.  However, Azlin is not relying on his lack of memory to create an issue of fact.  Azlin stated at various times in his EUO, deposition, and affidavit that Henson did not ask him the questions at issue from the application. Therefore, the Court finds Dickey to be inapposite.

For the foregoing reasons, the Motion to Strike is Denied.

II.     Motion for Summary Judgment

Republic argues that it is entitled to a declaratory judgment that the insurance policy is void ab initio due to Azlin making material misrepresentations in the insurance application.

Alternatively, Republic argues that the policy is void due to Azlin breaching the Fraud/Concealment provision of the policy both pre and post-loss.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

A.      Misrepresentations in the Application

10

It is well settled under Mississippi law that "misstatements of material fact in an application for insurance provide grounds for declaring a policy issued in reliance thereon void ab initio." GuideOne Mut. Ins. Co. v. Rock, 2009 WL 1854452, at *2 (N.D. Miss. June 29, 2009) (quoting Jones v. Reynolds, 2008 WL 2095679 (N.D. Miss. May, 16 2008)). "To establish that, as a matter of law, a material misrepresentation has been made in an insurance application, (1) it must contain answers that are false, incomplete, or misleading, and (2) the false, incomplete, or misleading answers must be material to the risk insured against or contemplated by the policy." Carroll v. Metropolitan Ins. and Annuity Co., 166 F.3d 802, 805 (5th Cir. 1999). The party seeking to void the insurance contract must establish the existence of a factual misrepresentation and its materiality by clear and convincing evidence. Id.; see also Mass. Mut. Life Ins. Co. v. Nicholson, 775 F. Supp. 954, 959 (N.D. Miss. 1991). The fact that a misrepresentation "was intentional, negligent, or the result of mistake or oversight is of no consequence." Rock, 2009 WL 1854452 at * 2 (citing cases).

"A misrepresentation is material if knowledge of the true facts would have influenced a prudent insurer in determining whether to accept the risk." Jones, 2008 WL 2095679, at *3 (citing Nationwide Mut. Fire Ins. Co. v. Dungan, 634 F. Supp. 674, 682 (S.D. Miss. 1986). Materiality is determined by reference to the time of the misrepresentation. Edmiston v. Schellenger, 343 So. 2d 465, 467 (Miss.1977).

However, "in cases where the agent takes charge of the application or suggests the answers to the questions, 'the company shall not avoid the policy because they are false or untrue, if full disclosures were made by the applicant to him.'" Mladineo v. Schmidt, 52 So. 3d 1154, 1167 (Miss. 2010); McCann v. Gulf Nat. Life Ins. Co., Inc., 574 So. 2d 654, 657 (Miss. 1990)) (quoting Nat. Life and Acc. Ins. Co. v. Miller, 484 So. 2d 329, 334 (Miss. 1985)). "If the applicant divulges the

11

information, but the agent who fills out the form does not record the information accurately, there has been no misrepresentation." GuideOne Ins. Co. v. Bridges, 2008 WL 4307483, at *4 (S.D. Miss. Sept. 16, 2008). Furthermore, "[a]n applicant has neither concealed nor misrepresented information when he has answered fully and truthfully all the questions asked of him." Rock, 2009 WL 1854452, at *3 (quoting Mattox v. W. Fid. Ins. Co., 694 F. Supp. 210, 216–17 (N.D.Miss.1988)).

Therefore, an insurer is not allowed to rescind the policy if its insured acted "in good faith throughout, and . . . the false answers were inserted without his knowledge or consent." Mass. Mut. Life Ins. Co. v. Nicholson, 775 F. Supp. 954, 961 (N.D. Miss. 1991). "The rule is simply the corollary of the agency principle that the principal is bound by the acts of the agent within the agent's authority, and that knowledge of the agent acting within the scope of her agency will be imputed to the principal." JEFFREY JACKSON, MISSISSIPPI INSURANCE LAW AND PRACTICE § 6:14 (2012). Of course, an applicant for insurance may not escape the consequences of his misrepresentations merely because the agent does the clerical task of filling out the application. Id. When the agent completes the application using the applicant's untruthful answers to the questions posed on the application, the applicant remains responsible for the misrepresentations. Id.

In the present case, Azlin contends that Henson, while acting as an agent for Republic, inserted the false answers on the insurance application without his knowledge or consent. Republic, relying on Henson's testimony, contends that Azlin supplied the false information. Given this conflicting testimony, the Court finds there to be an issue of fact as to whether the false information on the application originated from Azlin or Henson.

However, this is not the end of the inquiry as to this issue. Republic also contends that it ultimately does not matter whether the false information came from Henson or Azlin, because

12

Henson was acting as an agent for Azlin and not Republic. Republic cites only two Florida cases[7] for the proposition that an independent agent such as Henson is generally considered to be the agent of the insured rather than the insurer. Republic notes that Henson and the Mid-Delta Insurance Agency were not bound to solicit coverage from just one insurance company, but acted, in the words of Republic, as an "independent middleman" who sought insurance for Azlin at the lowest price, regardless of the company with whom the insurance was placed. However, Republic has cited no Mississippi authority for this proposition.

The former Mississippi Code section 83-17-1, which governed matters arising prior to January 1, 2002, provided that "[e]very person" who performed certain acts, such as soliciting insurance policies, receiving and delivering insurance policies, and collecting premiums, "shall be held to be the agent of the company for which the act is done." MISS. CODE ANN. § 83-17-1 (1999) (current version at MISS. CODE ANN. § 83-17-1 (Supp. 2010)). As Henson indisputably performed all of the above activities, there would be no question that he was acting as a statutory agent for Republic under the former statute. Neither party asserts that the definition of insurance agent contained in the current Mississippi Code section 83-17-1 is applicable to this case.

However, "the current statute is not the exclusive basis for finding agency. The statute does not supplant the common law of agency." JACKSON, *supra*, § 5:3 ; Andrew Jackson Life Ins. Co. v. Williams, 566 So. 2d 1172, 1180 (Miss. 1990) ("Mississippi recognizes the well-established principle that the general law of agency applies to insurers' relationships with their agents."); Hutton v. Am. Gen. Life & Acc. Ins. Co., 909 So. 2d 87, 94 (Miss. Ct. App. 2005) (same). In order to establish an agency relationship between Henson and Republic, Henson must have had actual or

---

[7]Amstar Ins. Co. v. Cadet, 862 So. 2d 736, 739-40 (Fla. Dist. Ct. App. 2003), and Almerico v. RLI Ins. Co., 716 So. 2d 774, 776 (Fla. 1998).

apparent authority to act on behalf of Republic.  Id.

Mid-Delta Insurance's authority to market and solicit the sale of Republic insurance policies was pursuant to an agency agreement with Southern States General Agency, Inc., a Republic Group entity.[8]  Henson testified that this agency agreement applied to his "actions undertaken to write the Bourbon Mall policies."  The agency agreement provided that Mid-Delta Insurance was an "agent" with the authority to "receive and accept proposals for contracts of insurance" and "to collect, receive and receipt for premiums on such insurance tender."

Republic paid Henson commissions by direct deposit for Republic policies he sold, and Henson testified that he had written over one hundred Republic policies.  Republic sent Henson numerous "Producer Bulletins" and other correspondence which was addressed to "our agents." Regarding the application process, Henson testified that he would generate a quote by filling out an application on his computer (outside the presence of the potential insured) using Republic's software.  He would then print out the application or quote paper and present the quote to the potential insured.  If the insured wanted the insurance, he would normally have the potential insured sign the application, and submit it to Republic along with the premium.  However, Henson testified that by the time he printed out an application, "It's already been approved.  When you print the application out, it gives you approval with a reference number."

A reasonable juror could conclude that Henson was acting on behalf of Republic at the time he completed the Bourbon Mall application.  Henson had actual authority to complete the insurance application electronically using Republic's software, submit it to Republic, obtain approval and a quote, relay the quote to the insured, accept the premium, and deliver the policy.  Henson was

---

[8] Republic terminated Hensons's contract shortly after Azlin filed his claim.

marketing Republic policies through a contractual arrangement with Republic (through Southern States) and paid commissions by Republic. Finally, Republic terminated Henson's contract in October of 2009, shortly after the irregularities with the Bourbon Mall application came to light.

Based on this evidence, a jury could conclude that Henson was the agent of Republic and not Azlin. See Bankers Fire & Marine Ins. Co. v. Dungan, 128 So. 2d 544, 545-47 (Miss. 1961) (affirming jury finding that insurance agent was acting as agent of the insurer and not the insured "under the general law of agency" despite not being a formally designated agent of the appellant insurer, where through an oral arrangement with the insurer's general agent, the agent solicited the insurance, obtained description of the property and other pertinent information, collected the premium, delivered the policy, and shared in the commission with the insurer's general agent); Se. Fid. Ins. Co. v. Gann, 340 So. 2d 429, 433 (Miss. 1976) ("[insurance agent] became the agent of the [appellant insurer] under the general law of agency . . . He acted in their behalf by placing the insurance and they accepted his services by issuing the coverage. Both were to profit from the transaction."). Given the conflicting testimony regarding whether the erroneous information on the application originated from Azlin or Henson, the Court finds genuine issues of material fact exist and Plaintiff's Motion for Summary Judgment on the basis of material misrepresentations on the insurance application is denied.

B.      Breach of the Concealment, Misrepresentation, or Fraud Clause

Alternatively, Republic argues that it is entitled to void the policy because Azlin breached the Concealment, Misrepresentation, or Fraud clause of the policy. The insurance policy that Republic issued contained the following condition:

A.      **CONCEALMENT, MISREPRESENTATION OR FRAUD**
        This Coverage Part is void in any case of fraud by you as it relates to this

15

Coverage Part at any time.  It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1.      This Coverage Part;
2.      The Covered Property;
3.      Your interest in the Covered Property; or
4.      A claim under this Covered Part.

In order for an insurer to defeat a policy based on this type of clause, it carries the burden of showing "that statements by the insured were (1) false; (2) material; and (3) knowingly and willfully made."  McCord v. Gulf Guar. Life Ins. Co., 698 So. 2d 89, 92 (Miss. 1997) (quoting Hall v. State Farm Fire & Cas. Co., 937 F.2d 210, 214 (5th Cir. 1991)).  The insurer must prove a breach of a "concealment" clause by a preponderance of the evidence.  Hall, 937 at 214; McCord, 698 So. 2d at 92.  Mississippi Courts take a broad view of materiality in this context.  Edmiston, 343 So. 2d at 466.  A fact is material if it "enable[s] the Company to possess itself of all information as to other sources and means of knowledge" of facts material to the insurer's rights.  Id. at 466-67 (citing Standard Ins. Co. v. Anderson, 86 So.2d 298, 301-02 (Miss. 1956)).

1.      Misrepresentations in the Application

Republic first argues that Azlin's misrepresentations during the application process constitute a breach of the Concealment or Fraud Condition "pre-loss."  However, as stated above, genuine issues of material fact exist as to whether Azlin or Henson was the source of the erroneous application information.  Therefore, summary judgment on this basis would be inappropriate as fact issues exist regarding whether there were statements *by the insured* which were false and knowingly and willfully made.

2.      Brent Bowers Interview

Republic next argues that Azlin misrepresented the timing and nature of the 2006 fire in his October 12, 2009 interview with Brent Bowers.  Republic relies on the following portions of the

16

interview:

| | |
|---|---|
| Bowers: | Have you had any prior fires at this location? |
| Azlin: | Yes sir.  I had a fire in the kitchen area probably five years ago but it was contained and I was never closed a day, was open the next day. |
| Bowers: | Grease fire? |
| Azlin: | Yes sir |
| Bowers: | How did it start? |
| Azlin: | Well I mean I don't know if they ever figured exactly how it started but it was in the kitchen area.  It could've been grease umm you know easily.  It could be grease behind the fryers and all but . . . |
| Bowers: | But you didn't have to shut down the business. |
| Azlin: | Never shut down.  Kept going. |
| Brent: | That would not have been this insurance company.  It was the one, the prior carrier? |
| Azlin: | That's correct |
| Brent: | Did they pay you a claim? |
| Azlin: | Yes sir they did. |
| Brent: | But you didn't have any loss of business income? |
| Azlin: | No sir.  No loss of business income at all.  Never missed a lick. |
| Brent: | Uh any other fires? |
| Azlin: | No sir.  No other, I don't think we had any thefts. |

Republic takes issue with the following statements: (1) Azlin stating the fire was "probably five years ago" when it was really three years ago; (2) Azlin's description of the fire as a grease fire, when the cause of the fire was never determined, and (3) Azlin's "never missed a lick" comment. First, the Court notes that Republic's evidence consists of an unsworn, unsigned transcript of Bowers' recorded interview with Azlin.  Transcripts of the unsworn recorded statements taken by Republic's adjustor are not proper summary evidence, and as such, may not be considered by the Court.  GuideOne Mut. Ins. Co. v. Rock, 2009 WL 1854452, at *5 (N.D. Miss. June 29, 2009) (citing Larry v. White, 929 F.2d 206, 211 n.12 (5th Cir. 1991) ("Unsworn pleadings, memoranda, or the like are not, of course, competent summary judgment evidence."); Gordon v. Watson, 622 F.2d 120, 123 (5th Cir. 1980) (court may not consider unsworn statements upon determination of

the propriety of a motion for summary judgment)).

Even if the Court were to consider the transcript, the Court would nonetheless find that issues of material fact exist as to whether Azlin knowingly and willfully made false material statements therein. Republic complains that Azlin misrepresented the timing of the 2006 fire by saying that it "probably 5 years ago" when it was really three years ago. Even if Azlin's equivocal answer that the fire "probably" happened five years ago - which implies that it may have happened more or less than five years ago - could be termed a false statement of fact, and the Court does not conclude that a reasonable juror would be bound to find it to be so, issues of fact also exist as to whether the statement was knowingly and willfully made.

Regarding Azlin agreeing with Bowers' suggestion that the fire was a grease fire and then saying "I don't know exactly how it started . . . it could've been grease," when the cause of the fire was undetermined, the Court finds, at the least, that issues of fact exist as to whether this was a false, material statement knowingly and willfully made.

Regarding the "never missed a lick" comment, Republic argues that Azlin was attempting to mislead the investigator into thinking that the 2006 fire was small, when in reality it resulted in a large claim. When asked if his prior insurer had paid a claim on the fire, Azlin responded in the affirmative, however, Bowers never asked the size of the claim. Azlin made the "never missed a lick" comment in response to a question about whether he had any loss of business income, which, as far the Court can discern from the record, is a true statement. Accordingly, the Court finds these arguments to be not well taken.

3.      Prior Cancellations, Non-Renewals and Declinations

Republic next asserts that it is entitled to void the policy because Azlin, in his examination

under oath, "testified that he had not been cancelled, non-renewed or declined." In his examination under oath, while counsel for Republic was asking Azlin whether Henson had asked him certain questions on the insurance application, the following colloquy ensued:

> Q.    And this says that you had not had one that was cancelled or decline. That's the way I understand your testimony is that, in fact, the answer that is given here is, in fact, correct.
> A.    Yes.
> Q.    But you're saying you didn't give that information to him.
> A.    I'm saying that I – I'm saying that I do not remember him asking these questions, but that's one question that I know what my answer would have been, but I just don't remember it one way or that other.
> Q.    Well, the answer is no, that you hadn't ever been – that you hadn't within three years had any policy declined –
> A.    I know for a fact –
> Q.    – cancelled –
> A.    – that I haven't – that I have not had it declined. Now, whether or not he had asked me if it was declined is a different situation. And I can't answer – I can't – you see what I'm saying?

Republic has submitted numerous documents showing that the Bourbon Mall's insurance was in fact cancelled, declined, and/or non-renewed on numerous occasions, including an insurance application signed by Azlin which acknowledges that his current carrier was non-renewing. Republic also points to testimony from Gwen McKnight, wherein she stated that she kept Azlin apprised of his insurance situation. However, in the Court's view, a fact issue exists as to whether Azlin's statement that he had not been declined was a knowing and willful false statement as opposed to an honest mistake. State Farm Fire and Co. v. Ramsey, 719 F. Supp. 1337, 1343-44 (S.D. Miss. 1989); Watkins v. Continental Ins. Co., 690 F.2d 449, 553 (5th Cir. 1982). Additionally, while Mississippi law takes a broad view of materiality, Edmiston, 343 So. 2d at 466, the Court finds fact issues exist regarding whether Azlin's post-loss statement that he had not been cancelled or declined was material to Republic's investigation. Watkins, 690 F.2d 449 at 452; see also

19

Merchants Nat. Bank v. S.E. Fire Ins. Co., Inc., 751 F.2d 771, 779 (5th Cir. 1985) (questions concerning financial condition of insured were not material where insurer was already aware of condition).

Republic has also filed a Supplement to its Motion for Summary Judgment, in which it asks the Court to consider the case of Bowens v. Nationwide Ins. Co., 2012 WL 827121 (N.D. Miss. Mar. 9, 2012). The Court in Bowens granted summary judgment to an insurer after it determined that the insured had misrepresented material facts in the application. Id. at *2-4. The Court noted that it was uncontested that the plaintiff personally read and answered the questions on the application. Id. at 1. Accordingly, Bowens is distinguishable from the present case.

Republic also asks the Court to consider Craig v. State Farm Fire and Cas. Co., 2:03-CV-400-B-A, (N.D. Miss. Jan. 5, 2005), aff'd 2005 WL 1719331 (5th Cir. 2005). Republic asserts "This Court in Craig held that even if the discrepancies . . . were the result of 'mere mistakes,' that Republic is nonetheless entitled to deny insurance benefits because of the misrepresentations." The Court did not hold so in Craig. Without belaboring the facts, which are not analogous to the present case, the Court in Craig stated:

> While insureds are entitled to make innocent mistakes when completing the inventory forms during the stressful period following a devastating fire loss, it is clear that the plaintiffs in the present case made their misrepresentations knowingly and wilfully. Further, even if the Court were to assume that the discrepancies between the PPIF and the actual inventory were the result of mere mistakes, the court finds that the defendant is nonetheless entitled to deny personal property benefits because the plaintiffs have admitted that they made misrepresentations to State Farm. The misrepresentations were material and made knowingly and wilfully.

As stated above, the Court finds that fact issues exist as to whether the alleged misrepresentations in this case were material and/or knowingly and willfully made. Accordingly, the Court denies Republic's Motion for Summary Judgment on the basis of a breach of the Fraud / Concealment

clause of the insurance policy.

       C.      Punitive and Extra-Contractual Damages

Republic also seeks partial summary judgment dismissing Azlin's bad faith counter-claim for punitive and extra-contractual damages. "Under Mississippi law, insurers have a duty to perform a prompt and adequate investigation and make a reasonable, good faith decision based on that investigation, and may be liable for punitive damages for denying a claim in bad faith." Broussard v. State Farm Fire & Cas. Co., 523 F.3d 618, 627-28 (5th Cir. 2008). To recover punitive damages for bad faith denial of an insurance claim, an insured must show that the insurer denied the claim (1) without an arguable or legitimate basis, either in fact or law, and (2) with malice or gross negligence in disregard for the insured's rights." Id. at 628. By statute, "[p]unitive damages may not be awarded if the claimant does not prove by clear and convincing evidence that the defendant against whom punitive damages are sought acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. § 11-1-65(1)(a).

Azlin seems to concede the issue of punitive damages, but argues that he is nonetheless entitled to extra-contractual damages because Republic denied the claim without a legitimate or arguable basis. Insurers who are not liable for punitive damages may still be liable for extra-contractual damages (such as reasonable attorney's fees, court costs, and other economic losses) where their decision to deny the insured's claim is without a reasonably arguable basis but does not otherwise rise to the level of an independent tort. Broussard, 523 F.3d at 628. A "plaintiff bears a heavy burden in demonstrating to the trial court that there was no reasonably arguable basis for denying the claim." Windmon v. Marshall, 926 So. 2d 867, 872 (Miss. 2006). "An arguable basis

21

is a reason sufficiently supported by credible evidence as to lead a reasonable insurer to deny the claim." Sobley v. S. Natural Gas Co., 302 F.3d 325, 342 (5th Cir. 2002) (citing State Farm Mut. Auto.Ins. Co. v. Grimes, 722 So.2d 637, 642 (Miss. 1998)). An exclusion or defense may constitute an arguable basis even if it does not ultimately bar coverage. Id. at 341.

The question of whether an insurer had an arguable basis to deny an insured's claim is an issue of law for the court. U.S. Fidelity & Guar. Co. v. Wigginton, 964 F.2d 487, 492 (5th Cir. 1992) (citing Dunn v. State Farm Fire & Cas. Co., 711 F. Supp. 1362, 1364 (N.D. Miss. 1988), aff'd 927 F.2d 869 (5th Cir. 1991). However, "[i]n the event the trial court determines that as a matter of law it cannot hold that the insurer had a legitimate and arguable defensive position, but that the evidence constituted disputed facts as to whether or not such situation existed, then the trial court should submit that issue to the jury." Reserve Life Ins. Co. v. McGee, 444 So. 2d 803, 809 (Miss. 1983).

Republic, asserts that, at the least, it had an arguable reason to deny the claim. Republic points to the erroneous information in the application, as well as Azlin's ambiguous EUO testimony as to whether Henson asked the questions in the application, the Bowers interview, and Azlin's EUO testimony regarding prior cancellations, declinations, or non-renewals of coverage.

Generally, "[t]he failure of the application to contain all of the information relayed by . . . [the insured] to . . . [the agent] does not constitute an arguable basis for denying the claim," Nichols v. Shelter Life Ins. Co., 923 F.2d 1158 (5th Cir. 1991) (quoting Nat. Life & Acc. Ins. Co. v. Miller, 484 So. 2d 329, 334 (Miss. 1985)). However, Azlin's position is that Henson never asked him the questions on the application containing the erroneous information. After considering the record as a whole, the Court finds that Republic's reasons for denying coverage are supported by evidence and are not the sort of tortious conduct necessary to support a claim of bad faith. In particular, the

22

evidence shows that after its initial investigation uncovered the discrepancies in the application, Republic initiated an investigation in a timely manner and conducted EUO's of Henson and Azlin. Henson testified that Azlin was the source of the information while Azlin was ambiguous as to whether he recalled the questions being asked and what his answers were. Azlin also erroneously testified, whether wilfully or by honest mistake, that consistent with the incorrect information in the application, he had never been declined insurance coverage. Accordingly, the Court finds that Republic at least had an arguable basis for denying coverage and summary judgment in favor of Republic as to Azlin's bad faith counterclaim is granted.

      D.      Other Claims

Republic also seeks summary judgment as to Azlin's counterclaim for "gross negligence or malicious, intentional acts." While Azlin argues that it was "grossly negligent for Republic to think it had an arguable reason to deny or delay paying the claim," the Court finds that Azlin has presented no evidence of conduct on the part of Republic rising to the level of gross negligence or an independent tort. Accordingly, the motion for summary judgment is granted as to these claims.

## CONCLUSION

The Motion to Strike [194] is DENIED. Republic Motion for Summary Judgment [179] is DENIED as it pertains to coverage, but GRANTED as to Azlin's counterclaims for "Bad Faith Investigation of and Denial of Claim And/Or Bad Faith Refusal to Pay the Claim Damages" and "Gross Negligence or Malicious, Intentional Acts."

SO ORDERED on this, the 26th day of September, 2012.

                          /s/ Sharion Aycock
                          **UNITED STATES DISTRICT JUDGE**